SCOTT, WILLIAMS & CO., RESPONDENTS, *vs.* JOSEPH CREWS, APPELLANT.

Ordinary diligence is all that the law exacts of the bailee in a case of pawn or pledge.

Ordinary diligence, in the law of bailments, is a relative term, and signifies that care which men of common prudence generally take of like articles of their own, at the time and in the place where the question arises.

The question being, whether bankers in Columbia, who had received on deposit certain collaterals, as security for money loaned by them to the bailor, were responsible to the latter for the loss of the collaterals from their banking house by robbery, the Circuit Judge declined, at the request of the bailor, to instruct the jury " that the bailees cannot be said to have exercised ordinary care, unless it be found that they have availed themselves of all the means for securing their deposits that art and mechanical skill could afford : and it is a proper inquiry for the jury to say whether proper efforts were made by the plaintiffs to ascertain and secure those mechanical implements of the age, which, without extraordinary diligence, could have been secured :" *Held*, That in this there was no error.

The Circuit Judge instructed the jury " that the Court could not prescribe any absolute rule or measure of diligence ; and that whether ordinary care devolved it upon the bailees, bankers in Columbia, to employ all the means of security known to art, and applicable to their business, was exclusively a question of fact for the jury." The verdict was for the bailees; and on appeal by the bailor : *Held*, That in this instruction there was error, and a new trial was granted.

BEFORE MELTON, J., AT COLUMBIA, FEBRUARY TERM, 1871.

This was an action on two sealed notes given by the defendant to the plaintiffs, one for $753.60, and the other for $3,000, both dated at Columbia, S. C., February 18, 1870, and due at sixty days.

The defendant, by his answer, alleged a counter claim as follows:

### FIRST CAUSE FOR COUNTER CLAIM.

1. That on the eighteenth day of February, 1870, at Columbia, when the defendant made, executed and delivered to the plaintiffs his note, under seal, for seven hundred and fifty-three dollars and sixty cents, ($753.60), enumerated as the first cause of action in their complaint, he deposited with them twelve hundred and fifty-six dollars, ($1,256), Bank of the State old bills, as a pledge for the payment of said note; that said Bank of the State old bills were then, and are now, worth to the defendant one hundred cents on the dollar; that on the 20th day of April, 1870, inst., when said notes became due, the defendant went to the banking office of the plaintiffs, and made them a proper and legal tender for the payment of said note, upon the return to him of his pledge; that the plaintiffs

informed him that said pledge had been stolen from them; that such theft could only have occurred through such gross and palpable negligence, on the part of the plaintiffs, as to make them, as bailees, liable to the defendant for the full value to him of the said pledge.

2. That neither said pledge, nor any part thereof, has been returned to the defendant by the plaintiffs.

SECOND CAUSE.

1. That on the eighteenth day of February, 1870, at Columbia, when the defendant made, executed and delivered to the plaintiffs his note, under seal, for three thousand dollars, ($3,000), enumerated as the second cause of action, in their complaint, he deposited with them five thousand dollars, ($5,000), Bank of State old bills, as a pledge for payment of said note; that said Bank of State old bills were then, and are now, worth to the defendant one hundred cents on the dollar; that on the 20th day of April, instant, when said note became due, the defendant went to the banking office of the plaintiffs, and made them a proper and legal tender for the payment of said note, upon the return to him of his pledges; that the plaintiffs informed him that his pledge was stolen from them; that such theft could only have occurred through such gross and palpable negligence, on the part of the plaintiffs, as to make them, as bailees, liable to the defendant for the full value to him of said pledge.

2. That neither said pledge, nor any part thereof, has been returned to the defendant by the plaintiffs.

That the defendant now is, and always has been, ready and willing to pay to the plaintiffs the amount of the aforesaid two notes, upon the return to him by them of his said pledges.

Wherefore, the defendant claims to recoup said sum of three thousand seven hundred and fifty-three dollars and sixty cents, ($3,753.60), by way of counter-claim to the plaintiffs' demand, to the extent of the amount claimed by the plaintiffs, and asks judgment for the excess, two thousand five hundred and two dollars and forty cents, ($2,502.40), with interest thereon, from the twentieth day of April, 1870, and for his costs in this action.

The plaintiffs replied to the counter claim as follows:

To the first cause of counter claim:

1. That they admit the deposit, in the vault of their banking house, of twelve hundred and fifty-six dollars, Bank of State bills, at a valuation of about sixty cents to the dollar, the same being a special deposit in a special package, put up by the defend-

ant himself, and marked in his name, which deposit was made to secure to the plaintiffs (in the absence of personal security,) the payment of the sealed note for seven hundred and fifty-three 60-100 dollars, enumerated as the first cause of action in their complaint.

2. They allege that the package of bills so specially deposited was taken by force and violence, in the night time, by robbers, from the well-secured vault of the equally well-secured banking house of the plaintiffs, in the city of Columbia, where it was deposited by the defendant himself, as a security for the payment of the sealed note aforesaid; and the package of bank bills so specially deposited by defendant, by reason thereof, have not been available to the defendant (without fraud or default on the part of the plaintiffs,) to discharge the debt by the said sealed note, due by the defendant to the plaintiffs.

3. The plaintiffs deny that such loss to the defendant of his said special deposit "occurred through such gross and palpable negligence on the part of the plaintiffs, so to make them liable, as bailees, to the defendant, for the full value to him of said pledge;" nor in such other manner whatsoever as to enable the defendant, in law, to recoup, by way of counter-claim, the said sum due to the plaintiffs, or any part thereof. On the contrary, the plaintiffs allege that the special deposit made by the defendant was kept and secured with diligence in the safe and well constructed vault of the plaintiffs, in the same manner, and with the same diligence as the money and valuable papers of the plaintiffs were kept and secured, and, further than this, the plaintiffs are not liable in law.

To the second cause of counter-claim:

1. That they admit the deposit in the vault of their banking house of five thousand dollars, Bank of State old bills, at a valuation of about sixty cents to the dollar, the same being a special deposit, in a separate package, put up by the defendant himself, and marked in his name, which deposit was made to secure to the plaintiffs (in the absence of personal security,) the payment of the sealed note for three thousand dollars, enumerated as the second cause of action in their complaint.

2. They allege that the package of bills so lost, specially deposited, was taken by force and violence, in the night time, by robbers, from the well secured vault of the equally well secured banking house of the plaintiffs, in the city of Columbia, where it was deposited by the defendant himself, as a security for the payment of the sealed note, lost as aforesaid; and the pack-

age of bank bills, so specially deposited by defendant, by reason thereof, have not been available to the defendant, (without fraud or default on the part of the plaintiffs,) to discharge the debt by the said last mentioned sealed note due by the defendant to the plaintiffs.

3. The plaintiffs deny that such loss to the defendant of his last mentioned special deposit " occurred through such gross and palpable negligence, on the part of the plaintiffs, as to make them liable, as bailees, to the defendant, for the full value to him of the said pledge," nor in such other manner whatsoever as to enable the defendant, in law, to recoup, by way of counter claim, the said sum, in the last mentioned sealed note due to the plaintiffs, or any part thereof. On the contrary, the plaintiffs allege that the special deposit last mentioned, made by defendant, was kept and secured with diligence, in the safe and well constructed vault of the plaintiffs, in the same manner, and with the same diligence as the money and valuable papers of the plaintiffs were kept and secured; and, further than this, the plaintiffs are not liable in law.

Wherefore, the plaintiffs, denying the right of the defendant to recoup the claim of the plaintiffs, by way of counter claim, and to ask judgment for the excess of such counter claim, in the sum of two thousand five hundred and two. 40-100 dollars, with interest thereon, pray judgment as heretofore prayed in their complaint.

At the trial, after the evidence had been heard, and the cause argued before the jury by the counsel for the respective parties, the counsel for the defendant requested His Honor to charge the jury as follows:

" That the plaintiffs cannot be said to have exercised ordinary care, unless it be found that they have availed themselves of all the means for securing their deposits that art and mechanical skill could afford ; and it is a proper inquiry for the jury to say whether *proper* efforts were made by the plaintiffs to ascertain and procure those mechanical improvements of the age which, without extraordinary diligence, could have been secured."

His Honor declined to charge this instruction as presented; as to the first portion, holding, that " the Court could not prescribe any absolute rule or measure of diligence; and that it was a question exclusively for the jury to find whether, in the language of the instruction, 'proper efforts were made by the plaintiffs to ascertain those mechanical improvements of the age which, without extraordinary diligence, could have been secured ;' in other words, ' whether

ordinary care devolved it upon the plaintiffs, bankers in Columbia, to employ all the means of security known to art, and applicable to their business, was exclusively a question of fact for the jury."

To which the defendant excepted.

The jury found for the plaintiffs the full amount of their claim, and the defendant appealed to this Court from the above judgment of the Circuit Court, upon the following grounds :

1. Because His Honor erred in declining to charge the jury as requested in the instruction asked for by the defendant.

2. Because His Honor erred in ruling that the question " whether ordinary care devolved it upon the plaintiffs, bankers in Columbia, to employ all the means of security known to art, and applicable to their business, was exclusively a question of fact for the jury."

*Chamberlain, Seabrook & Dunbar,* for appellant, admitted that the question in the case was one of ordinary negligence, and that this was a question of fact to be determined by the jury, under instructions as to what in law constitutes ordinary negligence. They then said :

The question here is solely in regard to the law which should have been given to the jury as their guide in reaching a verdict.

The appellant asked the Court below to charge the jury, in effect, that one of the rules applicable to this question was whether the respondents, in the care taken of the collaterals, had availed themselves of the mechanical improvements of the age, which were in ordinary use, and could have been secured without extraordinary diligence.

The Court refused to give this rule to the jury, holding, instead, that the question whether ordinary care required the respondents to keep up with the mechanical improvements of the age was a question of *fact* for the jury.

Our claim is that it is a pure and simple question of *law*—a rule to be taken and used by the jury in determining the final verdict of negligence or no negligence.

Our two positions, therefore, are :

1st. That the law does require of a person who is bound to use ordinary diligence in discharging a duty, that he should avail himself of the ordinary modes and appliances for discharging that duty which modern science and mechanical art have placed in common use.

2d. That this is a matter of law, which should have been given to the jury by the Court.

It is readily admitted that no absolute and unvarying standard of ordinary diligence can be laid down, but the general principles which are to be applied to all such questions are clear and well established.

Ordinary diligence has been the subject of definition by all the authorities, and has received definitions varying, from time to time, in some particulars, but agreeing in essential elements.—Story on Bail, § 2, 12; 2 Kent Com., 561.

It is important to attend to this consideration, not only to deduce the implied obligations of the bailee in a given case, but also to possess ourselves of the true measure by which to fix the application of the general rule.

In a recent case in the Supreme Court of Pennsylvania, (*the Erie Bank* vs. *Smith, Randolph & Co.*,) reported in the Legal Gazette, of January 20, 1871, we find a definition of ordinary diligence, as given by Judge Sharswood, in a case precisely similar in principle and in facts to our present case. Suit in that case was brought to recover the amount of a loan made upon collateral securities. The defendant set up as a counter-claim the value of the securities deposited with the plaintiff. Those securities had been lost by the plaintiffs by the robbery of their bank. Judge Sharswood, in charging the jury, uses the following language, laying down the rule that only ordinary diligence can be required in cases of the deposit of collateral securities for the payment of a debt or for money borrowed:

"What, then, is ordinary diligence? It has been defined, and, I think, well defined, by Judge Story, to be 'that degree of care which men of common prudence generally use in their own affairs in the age and the country in which they live?'" These last words are quite material and important in this case: "In the country and in the age in which they live." Thus, what might be ordinary diligence in one country and in one age, may, at another time, and in another country, be negligence, even gross negligence. As, for instance, to give a homely illustration, in many parts of the interior of the country where thefts are rare, it is quite usual for people to leave their barns, where horses and cattle are kept, without being locked at night; and, indeed, it is not an uncommon thing for the dwelling house, in which the owner and his family and his treasure all are, to be left unlocked all night. In cities it would be deemed a great want of ordinary care to do that, although nothing might be easier than to pick the lock of a stable, or to wrench a padlock off a staple door or a barn door. * * * * It is undoubtedly true

that in the case of a pledge of this character it is not enough to say
that the pawnee took the same care of the thing pledged as he did
of his own goods; nor is it any answer to the demand of the pawnor
or debtor to show that his own property, to an equal or greater
amount, was lost at the same time, and by the same alleged negli-
gence.   He must go further than that, and satisfy the jury that
there was ordinary diligence in keeping his own property.   If it
appears that he was not diligent in keeping his own property, that
would be no excuse for negligence in keeping the property of others
entrusted to him.   *   *   *   *   You must not misunderstand me
in regard to this:   I say that absence of any evidence of want of
care, or loss of the bailee's goods by the same occurrence, gives rise
to the presumption of ordinary care; but where there is direct evi-
dence of the manner in which the goods were kept, it is not then a
case to be determined by presumptions, which are intended only to
supply want of evidence.   The jury have to decide upon the evi-
dence whether the manner in which the property was kept did or
did not evince ordinary care, without regard to whether the bailee's
own goods were kept in the same manner or not.   The loss of their
own goods by the same theft is certainly evidence of good faith;
but, in the case of a pawn, it is not enough to show that the pawnee
exercised good faith.   And, notwithstanding the utmost and most
entire evidence of good faith, if the bailee has not used ordinary
care and diligence he is liable."

These authorities are sufficient to establish the general proposi-
tion that the direct rule of law, in cases of bailment known as
pledge, is that ordinary diligence is to be determined by reference
to the circumstances in each case.   The bailee is required to use all
the precautions of safety *applicable to the country, age and time in
which he lives.*

This general proposition abundantly covers the charge which the
Court below was asked to make in this case, namely : that it was a
rule of law that the plaintiffs were bound to avail themselves of
all the means for securing their deposits that art and mechanical
skill could afford, and that the jury were to inquire, in making
up their verdict, whether proper efforts were made by the plain-
tiffs to ascertain and procure the mechanical improvements of the
age, which, without extraordinary diligence, could have been se-
cured.

This is plainly no more than is embraced in the general doctrine
which all the authorities sustain, that ordinary diligence is to be

determined by the circumstances of the country, age and time in which the occurrence takes place.

Indeed, it would seem, as a matter of reason, that there was no point to which a bailee's care should more properly or naturally be directed than to the improved modes of protecting moneys and valuables such as are ordinarily in the keeping of banking institutions.

Everybody knows that appliances, such as safes, locks, vault-doors, window-fastenings, &c., which a few years ago were even regarded as ample and as complete evidence of ordinary diligence, would not now be regarded for a moment as affording any reasonable protection. Everybody is aware that great improvements are constantly taking place in the mechanical improvements and appliances for the protection of the community against robbery. The charge which was asked for, in the Court below, was simply an affirmation of the common doctrine that ordinary diligence must be measured to-day by a different standard from that which would have prevailed yesterday, or last year, or ten or twenty years ago.

It was not asked that all *possible* improvements, which might have protected this bank, should have been obtained, but simply the usual, approved and common means which art and mechanical skill could afford, or, in the exact language of the charge, requested " the mechanical improvements of the age, which, without extraordinary diligence, could have been secured."

Our claim is, that all this is not a new doctrine, but is embraced in every approved definition of ordinary diligence, and that " the circumstances of the case" include, necessarily, a reference to the existing state of the improvements which art and mechanical skill have placed in common use.

They cited Shear. & Red. on Neg., 5, 6; *Vaughn* vs. *The Tuff Vale Railway Co.*, 5 H. & N., 678; *Blyth* vs. *Birmingham Waterworks Co.*; *Cleveland* vs. *Spier*, 16 C. B., (N. S,.) 399; *Rood* vs. *The N. Y. and Erie R. R. Co.*, 18 Barb., 80 ; *Yeiser* vs. *The Philad. R. R. Co.*, 8 Penn., 336.

The Court will observe that this case is one, in its external circumstances, of rare occurrence. We have been unable to find more than a single case, and that of very recent date, where the circumstances and points of the case were precisely similar to the present case, although we see no difficulty in ascertaining, from numerous other cases, the general principles which should govern this. For-

34A

tunately, we can refer the Court to one case of precisely similar character to the present—the case to which we have already made reference upon another point—of the *Erie Bank* vs. *Smith, Randolph & Co.*, in the Supreme Court of Pennsylvania, January, 1871. Upon the trial of this case the Court (Judge Sharswood presiding) were asked to charge the jury upon the law, as follows: "The plaintiff was bound, in the care of these securities, to avail herself of such discoveries in science, and such late mechanical and other improvements as, if used, might, in all probability, have avoided the robbery, provided these were such, as, under the circumstances, it was reasonable to require them to adopt, and could be procured without great trouble and at a moderate cost, were in known practical use in the country, approved by experienced bankers and other custodians of bonds, cash," etc.

Judge Sharswood says: "I decline to answer this point as requested, but *I do* answer it in this way: That, in considering whether the bank used ordinary care, the jury may and ought, *in order to arrive at a standard of ordinary diligence at that time,* to take into consideration all such precautions as were generally used at the time. This, of course, takes into view the state of mechanical science, and the application of that science to this point; but the bank was not bound to the highest degree of diligence, and the plaintiffs are not liable for the loss, though they might have employed some mechanical or other improvements which might, in all probability, have avoided the robbery."

The Court will observe that the charge asked for in the present case avoided the objection which Judge Sharswood makes to the charge asked for in the Pennsylvania case. In the present instance our only request was that the jury should be told that the plaintiff was bound "to ascertain and procure those mechanical improvements of the age which, *without extraordinary diligence,* could have been secured." It was not asked, as in the Pennsylvania case, that any and all mechanical improvements which might probably have prevented robbery should be employed, but only such mechanical improvements of the age as could have been ascertained and procured in the exercise of ordinary diligence. The doctrine, as stated by Judge Sharswood, is, therefore, an expression of the precise rule of law which the Court below were asked to give to the jury in the present case.

Second. It will be observed that His Honor, in the Court below, after declining to charge the jury, as requested, proceeded to declare

that the question. "whether ordinary care devolved it upon the plaintiffs, bankers in Columbia, to employ all the means of security known to art and applicable to their business," was exclusively a question of *fact* for the jury.

Our second ground of appeal is, therefore, that the Court below erred in holding that such a question was exclusively a question of fact. The true instruction would have been that, whether ordinary care devolved it upon the plaintiffs to ascertain and procure the mechanical implements of the age, which, by ordinary diligence, they could have secured, was purely a question of law; and that the other question. whether, in fact, the plaintiffs did conform to this requirement of law, was exclusively a question of fact for the jury.

This is but a statement of an universal rule. Rules of law, legal principles and definitions are always to be given by the Court to the jury; and, under the instruction so given, the jury are, upon the evidence, to find their verdict. But, in the present instance, the Court held that what constitutes ordinary diligence, or whether ordinary diligence required the use of the mechanical improvements of the age, was a question exclusively of fact for the jury.

Negligence, like any other conclusion in a particular case, is one of mingled law and fact—that is, the question whether one has been negligent or not, is to be determined, first, by ascertaining the legal definition of negligence, and, second, by determining whether, according to this legal definition, upon the evidence presented, he has been guilty of negligence.

The former part is the province of the Court; the latter of the jury.

In Shear. & Red. on Neg., 11, it is said: "The question, whether a party has been negligent *in a particular case*, is one of mingled law and fact. It includes two questions: 1, Whether a particular act has been performed or omitted; and, 2, Whether the performance or omission of this act was a breach of legal duty. The first of these is a pure question of fact, the second a pure question of law. The law imposes duties upon men according to the circumstances in which they are called to act, and, though the law defines the duty, the question whether the circumstances exist which impose that duty upon a particular person is one of fact."

In *Purvis* vs. *Coleman*, 1 Boswell, 321, it is said: "The jury must ascertain. the facts, and the Judge must instruct them as to the rule of law which they are to apply to the facts as they shall find them."

" When the direct fact in issue is established by undisputed evidence, and such fact is decisive of the cause, a question of law is raised, and the Court should decide it. The jury have no duty to perform. The issue of negligence comes within this rule."—*Dascom* vs. *Buffalo and State Line Railroad Company*, 27 Barb., 221 ; *Foot* vs. *Wiswall*, 11 Johns. R., 304.

*Pope & Haskell*, for appellees, submit the following points and authorities :

1. It is admitted in the argument on both sides that the plaintiffs in the cause are chargeable only as bailees of a pawn under the defense set up by defendant in his answer.

2. That the deposit was a ·pledge " for the " mutual benefit and interest of the parties," and has been defined to be " a bailment of goods by a debtor to his creditor, to be kept till the debt is discharged," and is called, in Latin " vadium," and is known in the Roman law as " pignus," and in English as a " pawn " or " pledge."

3. That in such cases the rule of law requires " that the pawnee should use ordinary diligence in the care of the pawn, and, consequently, he is liable for ordinary negligence in keeping the pawn."

4. That " ordinary diligence " has been defined to be " that common care, in the sense of the law, which men of ordinary prudence generally exercise about their own affairs, in the age and country in which they live."

5. That the " standard of diligence is necessarily variable, with respect to the facts, although it be uniform with respect to the principle."

6. That it follows, " in every community," the degree of negligence " must be judged of by the actual state of society, the habits of business, the general usages of life, and the dangers, as well as the institutions peculiar to the age."

7. That the " difficulty " is not in the law, " but is intrinsic in the nature of the subject, which admits of an approximation only to certainty. Indeed, what is common or ordinary diligence is more a matter of fact than of law."

8. That in view of these principles and the authorities, the Court was accurately and precisely right in holding that it could not prescribe any absolute "rule or measure of diligence," but that it was a question for the jury upon the evidence to say whether proper efforts had been made by the plaintiffs, as bankers in Columbia, to ascertain the improvements of the age, and whether all the means of security known to art, and applicable to their business, were re-

quired of Scott, Williams & Co., to establish a case of ordinary care.

9. That the bailees, having established the loss of the bailment by the robbery of their bank, the *onus probandi* was devolved upon the bailor to establish his charge of gross negligence; but waiving this right, the bailees, at the trial, assumed the burthen of proving due diligence, which evidence was submitted to the jury, under the charge of the Judge, has not been excepted to, and the finding must be conclusive.

In support of those positions, the counsel for the appellees rely upon the following authorities: Story on Bail., §§ 11, 12, 13, 14, 15, 17 ; Jones on Bail., 8 and 9 ; Note, Story, Bail., on p. 16 of the 7th Ed., 1863, §§ 332 to 338, inclusive, and foot note to § 334 ; *Coggs* vs. *Bernard*, 6th Am. Ed., 1 Smith's L. C., 346 ; Parson on Contracts, last Ed., 1 Vol., pp. 591, 592 ; Note U, p. 592 ; 2 Kent's Com., Lecture 40, on Bailments ; *Doorman* vs. *Jinkins*, 2 Adolph & Ellis, 256 ; *Vaughan* vs. *Minlaw*, 3 Bingham, N. C., 468, 475.

Aug. 9, 1871.   The opinion of the Court was delivered by

MOSES, C. J.   It is admitted in the argument that the plaintiffs in the case are chargeable on the hypothecation of the securities of the defendant, only as bailees of a pledge or pawn, and in this species of bailment, all that can be required of the bailee is ordinary care and diligence.   This follows from the mutual advantage which the parties derive from the transaction.   Unlike a *mandatum*, where the benefit is exclusively for the bailor, and a *commodatum*, where the loan is only for that of the borrower, a pledge is made on a consideration which promises gain to the bailor and bailee.   The one obtains the use of the money borrowed, while the other procures a security for that which he has loaned.   Hence, in regard to the mutual advantage incident to this bailment, the bailee, in the preservation of the article pledged, is only liable for ordinary negligence, because nothing is required of him beyond ordinary diligence.

That the condition of the bailment in question demanded ordinary care was a principle of law, but what amounts to ordinary or common diligence, as Mr. Justice Story, in the 11th Section of his work on Bailments, says, "is more a matter of fact than of law." Diligence is a term of relative significance.   As referred to the charge of a bag of corn, and valuable jewel, the care which is exacted in the two cases is of a widely different character.   It is not only difficult, but almost impossible to prescribe a precise and

inflexible direction, which, with any sort of propriety, could uniformly apply to the varied and changing forms in which the question may be presented. Eminent writers have endeavored to define what is meant by "ordinary diligence" in connection with this character of bailment; and yet some of the most learned among them have at the same time not refrained from remarking on the difficulty of laying down a fixed and determinate rule.

Mr. Justice Story, in the same Section of his work to which we have referred, says: "But the difficulty is intrinsic, in the nature of the subject, which admits of an approximation only to certainty. Indeed, what is common or ordinary diligence is more a matter of fact than of law. And in every community it must be judged of by the actual state of society, the habits of business, the general usages of life, and the dangers, as well as the institutions peculiar to the age. So that although it may not be possible to lay down any very exact rule applicable to all times and all circumstances, yet that may be said to be common or ordinary diligence, in the sense of the law, which men of common prudence generally exercise about their own affairs in the age and country in which they live."

Chancellor Kent, in the 2d Vol. of his Commentaries, p. 561, says: "Diligence is a relative term, and it is evident that what would amount to the requisite diligence at one time, in one situation, and under one set of circumstances, might not amount to it in another." This care and diligence of prudent men in the management of their own affairs to which the bailee is bound, is to be measured in its exercise, under the like circumstances, and in the same situation in which he at the time is placed. The locality, too, is to be considered, for what such men do in the matter, in the country and age in which they live, is to be accepted as the result of experience in furnishing such safeguards and securities as would be most likely, having their own interest in view, to protect their property against the dangers of fire, theft and robbery. We commend the language of Mr. Justice Sharswood, in the case of the *National Bank of Erie* vs. *Smith, Randolph & Co.*, (Penn., January, 1871,) which has been frequently referred to in the argument of the counsel for the appellant. He says, "What, then, is usually done in a place in respect to things of a like nature (which must be considered as done in reference to the surrounding circumstances, in reference to the danger which threatens, in reference to the liability of loss,) what is generally done in a place in respect to things of a like nature, whether *more or less*, in point of diligence, than is exacted in another

place, becomes, in fact, the general measure of diligence in that place, and constitutes the standard." All the duties and obligations which the law imposes on a bailee of a pledge, we think, are here comprised in plain and perspicuous language. The ordinary diligence which attaches to the trust which such a relation creates, is not tested by the course and conduct of one or more individuals, but the standard is established from a general experience of human action under like circumstances, in the same age and country. As Mr. Justice Story says, in the 12th Section of his work already quoted, "It will thence follow that, in different times and in different countries, the standard is necessarily variable with respect to the facts, although it may be uniform with respect to the principle. So that, it may happen that the same acts which, in one country or in one age, may be deemed negligent acts, may, at another time and in a different country, be justly deemed an exercise of ordinary diligence."

The exception first made in the case before us is, that the Circuit Judge refused to charge the jury "that the plaintiffs cannot be said to have exercised ordinary care, unless it be found that they have availed themselves of all the means for securing their deposits that art and mechanical skill could afford; and it is a proper enquiry for the jury to say whether *proper* efforts were made by the plaintiffs to ascertain and procure those mechanical improvements of the age, which, without extraordinary diligence, could have been secured."

If the law requires the bailee of a pledge to provide himself with all the mechanical improvements of the age to protect him from the consequences of a loss of the property by theft, then, instead of being bound to ordinary care, he would be held to extraordinary diligence, which is only required in a bailment for the sole benefit of the bailee. The proposition of law involved in the charge so asked for was sought to be modified by submitting an enquiry to the jury, whether proper efforts were made by the plaintiffs to ascertain and procure those improvements which, without extraordinary diligence, could have been secured. This was only complicating them with another enquiry which could not affect the material issue upon which they were to pass.

Where one holds himself out to the community as a banker the public is to assume that he has the means of protecting the property confided to his care by the nature of his business, and that he is furnished with all that is necessary to enable him to use ordinary

diligence in the charge which he has invited. The appliances necessary to the diligence must have a relative reference to the community in which he lives. The safety of the article confided to him might possibly be better secured by watchfulness and vigilance than by bars and bolts. It is a common practice in large cities for banking houses to employ a watchman, and yet it would scarcely be contended that these plaintiffs were guilty in such omission, if not a single bank in the place in which they lived thought it necessary to avail itself of such a security. The proposition contended for by the appellant in this exception would make no difference in the application of the rule to a banking house in London or New York, both populous cities, where it is to be supposed that crime of every species prevails, and a small and quiet city like Columbia, where a burglary or stealing at night from a house rarely occurs. The " circumstances surrounding each particular case" must be considered. Prudence would demand a greater degree of care on the part of a bailee at Columbia than in Oconee, a small and quiet village, where, much to its credit, crime is seldom committed; while a still greater degree of diligence would be looked for from one in Charleston than in Columbia, because of the varied and changing character of the population of the metropolis, and of the more extensive field which it presents for the perpetration of crime. If ordinary negligence is to be inferred from the absence of the appliances which the mechanical skill of the age has invented, without regard to the place, there would be no discrimination between a loss by a bailee through theft in an extensive city or a secluded village. Can common reason or common sense justify a requirement in the law that would demand of a banker in Columbia the employment of the same security against theft, both in regard to the building and the vault, that would be demanded of one in New York or Charleston ? The bailees here, as was said by Mr. Justice Sharswood in the case referred to, " were not bound to the highest degree of diligence, and the plaintiffs are not liable for · the loss, though they might have employed some mechanical or other improvements which might in all probability have avoided the robbery." The instruction asked in the case before us is said to be, in effect, identical with the language of Judge Sharswood, because here it was said to be limited "to the mechanical improvements of the age, which, without extraordinary diligence, the plaintiffs could have secured." If the proposition is to be applied independent of the locality, and the caution which springs from a consciousness of danger by reason of the pro-

bability of crime from the character of the community, what rule would the jury prescribe for itself in determining to what extent such improvements could have been procured without extraordinary diligence?

There is no doubt that ordinary diligence must be measured, at this day, by a different standard from that which would have been applied twenty years ago, but looking to the period and the place, the jury are to determine if it was properly exercised under the surrounding circumstances.

Good faith is not involved in the consideration. An honest man may be careless and indifferent with his own, but his want of care of the property of others entrusted to him for safe keeping on a consideration, is not to be excused by proof of good intention. The answer to the question, "Did the bailee, under the circumstances, do all that could be expected of a reasonable and prudent man?" should be accepted as a determination of the issue.

In *Vaughan* vs. *The Taffe R. R. Co.*, 5 Hurls. & Nor., 678, Willes, J., said: "The definition of negligence is the absence of care, according to the circumstances." Sherman & Redfield say, in their work on Negligence, at page 5: "Culpable negligence is the omission to do something which a reasonable, prudent and honest man would do, or the doing something which such a man would not do under the circumstances surrounding each particular case."

The ground of exception secondly made is, that the Circuit Court declining the instruction first asked, held " that the Court could not prescribe any absolute rule or measure of diligence, and that it was a question exclusively for the jury to find 'whether, in the language of the instruction, proper efforts were made by the plaintiffs to ascertain those mechanical improvements of the age, which, without extraordinary diligence, could have been secured; in other words, whether ordinary care devolved it upon the plaintiffs, bankers in Columbia, to employ all the means of security known to art and applicable to their business, was exclusively a question of fact for the jury."

This, we hold, was error, because it submitted to the jury a question of legal determination—whether ordinary care devolved it on the plaintiffs to employ all such securities was not exclusively a question of fact for the jury. If the plaintiffs were bound to the rule implied by the language, then they are chargeable with extraordinary diligence, for this would exact, on the part of the bailee, that care which very prudent persons take of their concerns, and

such persons, it is to be supposed, would provide themselves with all the means of security known to art and applicable to their business. The bailees here were only liable for the want or ordinary care, and yet it was left to the jury to decide, whether a requisition which could only apply where extraordinary care is demanded should be claimed from a bailee who was only bound to ordinary diligence. It made the jury the judges of the law.

Negligence is a mixed question of law and fact. In the case before the Court, the law required that the plaintiffs should exercise that diligence in the care of the collaterals, which prudent men, under the same circumstances, ordinarily exercise about their own affairs, in the age and country in which they live, and the jury was to determine, on all the evidence before them, whether they had so done.

It is ordered and adjudged that the motion be granted and a new trial ordered.

*Willard,* A. J., and *Wright,* A. J., concurred.