**UNITED TRANSPORTATION UNION E et al., Plaintiffs-Appellants,**

v.

**BURLINGTON NORTHERN, INC., Defendant-Appellee,**

and

**Brotherhood of Locomotive Engineers, Defendant-Intervenor-Appellee.**

No. 71–1715.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1972.

Decided Dec. 18, 1972.

Patrick J. Foley, Rerat, Crill, Foley & Boursier, Minneapolis, Minn., for appellants.

Harold A. Ross, Cleveland, Ohio, for appellee, Brotherhood of Locomotive Engineers.

Barry McGrath, St. Paul, Minn., for appellee, Burlington Northern, Inc.

Before VAN OOSTERHOUT and MURRAH,[*] Senior Circuit Judges, and HEANEY, Circuit Judge.

HEANEY, Circuit Judge.

The United Transportation Union appeals from a decision denying its request for a preliminary injunction and dismissing its complaint for lack of jurisdiction. See, United T.U.E., Gen. C. of Adj. v. Burlington Northern, Inc., 332 F.Supp. 486 (D.Minn.1971). We affirm because the dispute is one within the exclusive jurisdiction of the National Railroad Adjustment Board, and because facts have not been shown which justify injunctive relief pending a decision of the Board.

The trial court succinctly outlined the facts in its memorandum. We draw generously from that memorandum in outlining the facts here.

Historically, the railroads have recruited locomotive engineers from personnel working as locomotive firemen. Prospective engineers are first employed as firemen and placed on seniority rosters in that craft. As a fireman moves up his seniority roster, he is exposed to the skills of an engineer. After a certain period, the fireman is examined on his engineering capabilities; and if qualified, the individual becomes eligible for promotion to engineer while retaining his position as a fireman. The individual is placed on the engineer seniority roster but also retains his position on the fireman seniority roster. With the number of fluctuations in the demand for engineers, the employees low on the engineer seniority list "ebb and flow" between positions as engineer and fireman.

The Brotherhood of Locomotive Engineers (BLE) for many years has been the bargaining representative for the craft of locomotive engineers working on the predecessor railroads of the Burlington Northern. The predecessor of the United Transportation Union, the Brotherhood of Locomotive Firemen & Enginemen has been the bargaining representative for the craft of locomotive firemen on these railroads.

Prior to the merger which created the Burlington Northern, the component carriers entered into employee protective and merger agreements with both the BLE and the predecessor of the UTU. These agreements provided for the preservation of employment, for the guarantee of monthly earnings and for the consolidation of seniority rosters and districts on the merged carriers. Subsequently, the railroad and the unions entered into implementation agreements to effectuate the employee protective and merger agreements.

On November 30, 1967, the Interstate Commerce Commission granted the merger applications creating the Burlington Northern. With reference to employee protection, the Commission required that the provisions of the protective agreements be implemented and applied to all employees. On February 2, 1970, the merger was approved by the Supreme Court as authorized by the ICC.

On February 19, 1970 the railroad and the BLE entered into an agreement formulating the basis for consolidating the engineer seniority rosters on the component lines. The agreement provided:

"Whenever there is subsequently a reduction in the working lists of engineers in a particular zone, and there is a discrepancy in seniority sequence of individuals as shown on the respective rosters—the employees in that zone on the seniority rosters as drawn

---

[*] Senior Circuit Judge, Tenth Circuit, sitting by designation.

by the firemen's organization, who are the senior firemen on such rosters will be reduced from the engineers' working lists, after the usual process of displacements."

On February 26, 1970, the railroad and the UTU entered into an agreement which contained the same provision.

On May 28, 1970, a dispute arose concerning the proper interpretation of that clause with respect to engineers employed by the railroad in the Spokane Division—the basic question being whether the engineers' or firemen's seniority lists would be used to determine which engineers were entitled to priority. The railroad decided that the firemen's seniority list should be controlling. The BLE protested that this action by the carrier failed to fully comply with the terms of the February 19 agreement. It requested that the dispute be submitted to a Special Adjustment Board. The railroad agreed. There is an unresolved dispute in the record as to whether the UTU was advised of and given an opportunity to participate in the hearing.

On July 7, 1971, Special Board No. 768 entered an award in favor of the BLE deciding, in substance, that the engineers' seniority list would be controlling.

The UTU then commenced this action in District Court contending that the award of the Special Board conflicts with its interpretation of the common language in the February agreements; and that in following the award, the railroad violated its contract with the UTU.

The trial court denied relief on two alternative grounds: (1) that the dispute was a minor one within the exclusive competence of the National Railroad Adjustment Board, and (2) that the dispute is essentially a representational one within the exclusive jurisdiction of the National Mediation Board.

We were initially troubled by the trial court's decision. It seemed clear to us that the dispute was not a jurisdictional one because the issue was not one of determining which union was to represent certain employees, but rather one of determining which employees were senior under the February agreements. Thus, we reasoned that the trial court erred as viewing the dispute as a jurisdictional one within the exclusive jurisdiction of the National Mediation Board.

On the other hand, we were not satisfied with the results reached by characterizing the dispute as a minor one within the jurisdiction of the Railroad Adjustment Board. While we were convinced that the dispute was a minor one, see, Brotherhood of Loc. F. & E. v. Southern Pac. Co. (T.E.L.L.), 447 F.2d 1127 (5th Cir. 1971), we were not satisfied that it was proper to resolve the dispute by a Special Adjustment Board consisting of representatives of the railroad and engineers' union and neutrals selected by them. In our view, both unions were entitled to participate in any proceedings to determine the meaning of a paragraph common to both collective bargaining agreements. We felt that important rights of employees should not be determined in proceedings in which some of the employees were unrepresented. See, T.-C. E. Union v. Union Pacific R. Co., 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966).

At oral argument, however, counsel for the unions and the railroad agreed that notwithstanding the decision of Special Adjustment Board No. 768, the UTU has the statutory right under Section 3, first of the National Railway Labor Act, 45 U.S.C. § 153, first, to submit this dispute to the National Railroad Adjustment Board, that all parties would have a right to participate in the hearing before the Board, and that all will be bound by the results reached notwithstanding the decision of Special Adjustment Board No. 768.[1] We are satis-

---

1. Subsequent to oral argument, counsel for UTU advised the Court that he erred in

making the above concession. He stated that the merger agreements between Bur-

fied that counsel's agreement correctly expresses the law.

 There remains then only the question of whether injunctive relief should be granted by the District Court pending the final resolution of the dispute in a proceeding in which both unions participate. We think not. The record is barren of any showing of irreparable injury, and the trial court did not find that such injury is threatened. See, Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 (1946); Love v. Atchison, T. & S. F. Ry. Co., 185 F. 321 (8th Cir. 1911), cert. denied, 220 U.S. 618, 31 S.Ct. 721, 55 L.Ed. 612 (1911).

Affirmed.

lington Northern, Inc., and UTU, and Burlington Northern, Inc., and BLE provided the exclusive remedy for the resolution of this dispute. We do not agree.

The merger agreement provides a method under which issues such as this can be resolved, but we do not believe that the method is an exclusive one.