563 F.2d 1279
 96 L.R.R.M. (BNA) 2754, 82 Lab.Cas. P 10,184
 GENERAL COMMITTEE OF ADJUSTMENT, United Transportation Union
E., Burlington Northern, Inc., Great Northern
Segment, Appellant,
v.
BURLINGTON NORTHERN, INC., and Brotherhood of Locomotive
Engineers, Appellees.
 No. 76-1910.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 18, 1977.
Decided Oct. 19, 1977.
 
 Patrick J. Foley, Billings, Mont.
 Barry McGrath, St. Paul, Minn., and Harold A. Ross, Cleveland, Ohio, filed briefs and argued orally for Burlington Northern, Inc; Robert V. Atmore, Minneapolis, Minn., on brief for Brotherhood of Locomotive Engineers.
 Before CLARK, Associate Justice, Retired,* MATTHES, Senior Circuit Judge, and HEANEY, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 The United Transportation Union E. (UTU-E) appeals from an order of the United States District Court for the District of Minnesota granting a summary judgment in favor of the Burlington Northern, Inc., (BNI) granting the motion of the Brotherhood of Locomotive Engineers (BLE) to dismiss the plaintiff's complaint and denying UTU-E's motion for a summary judgment. The effect of the District Court's orders was to hold that the wage disputes involving locomotive engineers employed by the BNI and arising under the Merger Protective Agreement between the bargaining representative of the locomotive engineers and the BNI were to be determined by a BNI-BLE Disputes Committee rather than a Public Law Board established pursuant to the Railway Labor Act or a UTU-E-BNI Disputes Committee.
 
 
 2
 The underlying facts are briefly stated. Historically, the railroads have recruited locomotive engineers from the locomotive firemen. As a fireman gains seniority, he is exposed to the skills of an engineer. After a certain period, he is examined on his engineering capabilities. If qualified, he becomes eligible for promotion to engineer while retaining his position as a fireman. He is placed on the engineer seniority roster but also retains his position on the fireman seniority roster. With the fluctuating demand for engineers, the employees low on the engineer seniority list "ebb and flow" between positions as engineer and fireman.
 
 
 3
 The BLE for many years has been the bargaining representative for the locomotive engineers working on the BNI. Similarly, the UTU-E has been the bargaining representative for the locomotive firemen.
 
 
 4
 Prior to the merger creating the BNI, the component carriers entered into employee protective and merger agreements with both the BLE and the predecessor of the UTU-E. These agreements provided for the preservation of employment, the guarantee of monthly earnings and the consolidation of seniority rosters and districts on the merged carriers. Subsequently, the railroads and the unions entered into implementation agreements to effectuate the employee protective and merger agreements.
 
 
 5
 The Interstate Commerce Commission granted the merger applications creating the BNI. It required that the provisions of the protective agreements be implemented and applied to all employees. The Supreme Court subsequently approved the merger.
 
 
 6
 This litigation arose when the work week for engineers employed by the BNI in Canada was reduced from six days to five days and the wage guarantees provided to engineers were affected. The engineers affected by the work shrinkage disputed the application of the transition factor used to calculate the wage guarantees. The engineers disputing this transition factor were members of both the UTU-E and the BLE. They asked the UTU-E to process their grievance. The UTU-E undertook the responsibility but was unable to resolve the dispute with the BNI. Thereafter, it asked that a UTU-E-BNI Special Board of Adjustment (SBA No. 793) be convened to determine the merits of the matter. The BNI objected, arguing that the SBA No. 793 lacked jurisdiction to hear the dispute. It agreed, however, to submit the jurisdictional issue to the SBA No. 793. The UTU-E similarly agreed. The issue submitted to the Board was:
 
 
 7
 Pursuant to the Interstate Commerce Act, the Railway Labor Act and Special Board of Adjustment No. 793's Agreement dated May 24, 1972, it is the UTU's position that it may refer, present and receive an award from Board No. 793 on any merger related dispute involving one or more of its member's claims and/or grievances while they are in the category of a locomotive engineer and subject to the BLE merger agreement on the BNI, and based on the so-called third party interest of providing BLE with the right to a written interpretation to Board 793's members.
 
 
 8
 Is the position of UTU correct in part or whole?
 
 The Special Adjustment Board held:
 
 9
 Taking then as it finds them, the UTU (E) Merger Protective Agreements and the May 24, 1972 Agreement, under the authority of which this Board functions, Special Board of Adjustment No. 793 cannot find that its jurisdiction and authority extends to the interpretation and application of the provisions of the BNI-BLE Merger Protective Agreement or implementing agreements entered into between BNI and BLE to engineers who happen to be members of UTU(E). Accordingly, the question at issue here must be answered in the negative.
 
 
 10
 The UTU-E representative on the Board dissented.
 
 
 11
 Thereafter, the UTU-E requested the BNI to establish a Public Law Board pursuant to the Railway Labor Act, 45 U.S.C. § 151 et seq. The BNI rejected the request. It served notice that it was submitting the claims of the engineers to the BNI-BLE Disputes Committee even though the employees had submitted no claims to the BLE.
 
 
 12
 The UTU-E then brought action in the United States District Court for the District of Minnesota. It sought to enjoin the BNI from proceeding with the submission of the claimants' dispute to the BNI-BLE Disputes Committee and to require the BNI to submit the dispute to a Public Law Board pursuant to the provisions of the Railway Labor Act.
 
 The District Court held:
 
 13
 The UTU-E's contention that the BN has discriminated against it with respect to grievance representation is without merit. * * * (T)he BN has conceded from the start that the UTU-E has the right to represent these engineers before the BN-BLE Disputes Committee if it so desires. * * * (McElroy v. Terminal Railroad Association of St. Louis, 392 F.2d 966 (7th Cir.), cert. denied, 393 U.S. 813, 89 S.Ct. 83, 21 L.Ed.2d 89 (1968)) does not require that the BN submit this dispute to a board upon which the UTU-E has representation. * * *
 
 
 14
 The real issue * * * (is) which board under either the merger agreements or by statute has jurisdiction to consider the claims raised by these Canadian engineers. * * * In reaching a determination of this question, the Court must be mindful that the UTU-E's own Disputes Committee, a duly authorized arbitrator under the BN-UTU-E Merger Protective Agreement, held that the BN-BLE Disputes Committee was the proper forum to determine these issues.
 
 
 15
 The question as to whether a Public Law Board is the proper forum to determine these issues has been addressed by the Court of Appeals for the Eighth Circuit. In Brotherhoood of Locomotive Engineers v. North Western Railway Co., 314 F.2d 424 (8th Cir. 1963), the Court held the arbitration procedure adopted by the parties pursuant to a merger agreement approved by the ICC took precedence over the arbitration provisions contained in the Railway Labor Act. Id., 314 F.2d at 433. On the basis of this decision it is clear that the plaintiff's request for the establishment of a Public Law Board pursuant to the Railway Labor Act, 45 U.S.C. § 151 et seq. is without merit. * * * The BN-UTU-E's Disputes Committee, Special Board No. 793, has already concluded that the proper forum for the resolution of these claims is the BN-BLE Disputes Committee. Given the limited powers of a court to review an arbitration decision, it is clear that the decision of the BN-UTU-E Disputes Committee is dispositive of this litigation.
 
 
 16
 The Court's role in reviewing an arbitration decision is limited solely to determining whether the decision "draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) * * *. Viewing the decision of Special Board No. 793 in light of this standard, it is clear that its decision must be upheld. The essence of the BN-UTU-E Merger Protective Agreement is that it applies solely to firemen and enginemen, not to engineers. Therefore, Special Board No. 793 correctly determined that it had no jurisdiction to consider engineers' claims arising out of wage guarantees contained in the BN-BLE Merger Protective Agreement and that the resolution of such claims resided exclusively in the province of the BN-BLE Disputes Committee.
 
 
 17
 General Committee of Adjustment, United Transportation Union E., Burlington Northern, Inc., Great Northern Segment v. United States of America and Burlington Northern, Inc., et al, No. Civ. 4-75-444 (Lord, J., Order, July 19, 1976).
 
 
 18
 The UTU-E challenges the trial court's holding on several grounds. It initially contends that the court erred in upholding SBA No. 793's decision on the jurisdictional issue. We find little merit to this contention. Ordinarily, the question of whether an arbitration board has jurisdiction to decide a dispute is to be determined by the courts. Operating Engineers v. Flair Builders, Inc., 406 U.S. 487, 491-492, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); International U., U.A., A. & A. I.W. v. International T. & T., 508 F.2d 1309 (8th Cir. 1975). Here, however, the UTU-E consented to submit the jurisdictional issue to the Special Adjustment Board and, thus, is bound by the Board's decision.[1]
 
 
 19
 The UTU-E next contends that the trial court gave the decision of Special Adjustment Board No. 793 a broader meaning than the Board intended. The court stated that the Board held that jurisdiction to resolve the type of claim submitted here resided exclusively in "the province of the BN-BLE Disputes Committee." The UTU-E is correct. The Special Adjustment Board No. 793 held only that it did not have jurisdiction to interpret the provisions of the BNI-BLE Merger Protective Agreement. It did not decide whether the dispute could be submitted to a Public Law Board pursuant to the Railway Labor Act. The trial court's holding that it could not, therefore, must be judged without reliance on the decision of the Special Adjustment Board.
 
 
 20
 In United Transportation U. E. v. Burlington Northern, Inc., 470 F.2d 813 (8th Cir. 1972), we were faced with a similar problem. In that case:
 
 
 21
 (A) dispute arose concerning the proper interpretation of (the) clause with respect to engineers employed by the railroad in the Spokane Division the basic question being whether the engineers' or firemen's seniority lists would be used to determine which engineers were entitled to priority. The railroad decided that the firemen's seniority list should be controlling. The BLE protested that this action by the carrier failed to fully comply with the terms of the February 19 agreement. It requested that the dispute be submitted to a Special Adjustment Board. The railroad agreed. There is an unresolved dispute in the record as to whether the UTU was advised of and given an opportunity to participate in the hearing.
 
 
 22
 On July 7, 1971, Special Board No. 768 entered an award in favor of the BLE deciding, in substance, that the engineers' seniority list would be controlling.
 
 
 23
 The UTU then commenced this action in District Court contending that the award of the Special Board conflicts with its interpretation of the common language in the February agreements; and that in following the award, the railroad violated its contract with the UTU.
 
 
 24
 The trial court denied relief on two alternative grounds: (1) that the dispute was a minor one within the exclusive competence of the National Railroad Adjustment Board, and (2) that the dispute is essentially a representational one within the exclusive jurisdiction of the National Mediation Board.
 
 
 25
 Id. at 815.
 
 
 26
 The UTU-E appealed. We stated in our opinion:
 
 
 27
 At oral argument, however, counsel for the unions and the railroad agreed that notwithstanding the decision of (the BNI-BLE) Special Adjustment Board No. 768, the UTU has the statutory right under Section 3, first of the National Railway Labor Act, 45 U.S.C. § 153, first, to submit this dispute to the National Railroad Adjustment Board, that all parties would have a right to participate in the hearing before the Board, and that all will be bound by the results reached notwithstanding the decision of Special Adjustment Board No. 768. We are satisfied that counsel's agreement correctly expresses the law.
 
 
 28
 Id. at 815-816 (footnote omitted).
 
 
 29
 Subsequent to oral argument, counsel for the UTU-E changed his mind. He advised the Court that he erred in making the above concession. He stated that the merger agreements between BNI and UTU-E, and BNI and BLE provided the exclusive forum for the resolution of the dispute. As his change of position was received after our opinion was written but before it was released, we added the following footnote:
 
 
 30
 The merger agreement provides a method under which issues such as this can be resolved, but we do not believe that the method is an exclusive one.
 
 
 31
 Id. at 816 n.1.
 
 
 32
 We then held that a union has a right to submit merger-related disputes to a Public Law Board. No appeal was taken from the decision of this Court and no petition for rehearing en banc was filed.[2] We are now confronted with the question as to whether we will adhere to this holding and permit the UTU-E to submit this dispute to a Public Law Board and require the BNI to participate in such submission.
 
 
 33
 Before answering this question, we make clear that all parties agree that in all merger-related disputes, members of the UTU-E working as engineers are entitled to be represented by the UTU-E before a BNI-BLE Special Adjustment Board. Similarly, BLE members working as firemen are entitled to be represented before a UTU-E-BNI Special Adjustment Board by the BLE. See McElroy v. Terminal Railroad Association of St. Louis, 392 F.2d 966 (7th Cir.), cert. denied, 393 U.S. 1015, 89 S.Ct. 610, 21 L.Ed.2d 559 (1968); Brotherhood of Locomotive Eng. v. Denver & R. G. W. R. Co., 411 F.2d 1115 (10th Cir. 1969). We also make it clear that all parties agree that in disputes arising out of collective bargaining agreements, other than merger protective agreements, an employee not only has a right to be represented by the union of his choice but also has a right to have his union representative sit on the arbitration panel deciding the case. The employee has the right even though the contract being construed was negotiated by a rival union and even though precedents established by the rival union and the railroad are to be followed.
 
 
 34
 We finally make it clear that we have approved the decision of a UTU-E Special Adjustment Board holding that it does not have jurisdiction to hear merger-related disputes which involve the construction of the collective bargaining agreement between the BNI and the BLE.
 
 
 35
 The disagreement lies only in whether a locomotive engineer, who is a member of the UTU-E and employed by the BNI, has a right to have the merger-related dispute decided by a Public Law Board on which the UTU-E is represented.
 
 
 36
 The issue is an important one not only to the employees of the BNI who are members of the UTU-E but also to the Union itself. An aggrieved employee cannot help but feel that his interests in an arbitration proceeding will be better served if his union representative sits in on the closed door discussions that follow a presentation than if a representative of a union to which he does not belong or to which he has not entrusted the adjustment of his grievance has this privilege. Yet, the employee's position on the seniority roster may be such that it is important to him to maintain his membership in the UTU-E. Moreover, an employee may have strong personal feelings for wanting to maintain membership in the union of his choice and to have that union process his grievances, including those that may be merger-related.
 
 
 37
 The UTU-E is certain to be affected if it loses the right to sit as a member of arbitration panels adjusting merger-related grievances. Some firemen, who might otherwise choose the UTU-E, will join the BLE simply because they will want the most effective representation possible. The problem is compounded because the line between merger-related grievances and those arising out of collective bargaining agreements is one that cannot always be drawn with certainty.
 
 
 38
 It was to avoid these problems and to accommodate the ebb and flow between firemen and engineers that the Seventh Circuit in McElroy v. Terminal Railroad Association of St. Louis, supra, and the Tenth Circuit in Brotherhood of Locomotive Eng. v. Denver & R. G. W. R. Co., supra, held that members of the Firemen's Union, the predecessor to the UTU-E, could designate that Union to represent them before the National Railroad Adjustment Board with reference to time claims and disciplinary investigations occurring while they perform the services of locomotive engineers. We would note that such representation is conceded by all parties to this dispute to include the right to have a Firemen's Union representative serve on the adjustment board. The logic that inspired the holdings in the cited cases is applicable here.
 
 
 39
 We, thus, find no reason for departing from our decision in United Transportation U. E. v. Burlington Northern, Inc., supra, and neither the BNI nor the BLE have advanced any practical reasons for doing so.
 
 
 40
 The BNI and the BLE argue that this Court's decision in Brotherhood of Loc. Eng. v. Chicago & North Western Ry. Co., 314 F.2d 424 (8th Cir. 1963), precludes our holding that the UTU-E has a statutory right under § 3, first of the National Railway Labor Act, to submit merger-related disputes of their members to the National Railroad Adjustment Board. While this assertion is contrary to the position taken by them when previously before this Court, it deserves an answer.
 
 
 41
 In the cited case, the Brotherhood of Locomotive Engineers insisted that they had a right to strike over five jobs, which were being abolished pursuant to a merger between the Northwestern and M. & St. L. Railroads and related seniority problems. The merger had been approved by the ICC. We held that § 5 of the Interstate Commerce Act vests in the Commission broad powers to approve, authorize and facilitate mergers; and pursuant to that authority, the ICC had approved a merger protective agreement which included provisions to protect employees and to adjust work realignments. We concluded that the employees did not have a right to strike over merger-related disputes. In the process, we used language which is certainly broad enough to support the appellees' point of view.[3] But we are presented with an entirely different situation. No strike is threatened and everyone agrees that the dispute will be settled by arbitration. The only question is whether the UTU-E can sit on the arbitration board that is convened to decide a claim submitted by a UTU-E member to the UTU-E and by the Union to the BNI. We hold that they have a right to do so. If they are precluded from doing so in a Special Adjustment Board, as they were here, they can process the merger-related grievances of their members through a Public Law Board established pursuant to the Railway Labor Act. Contra, Clemens v. Central Railroad Company of New Jersey, 264 F.Supp. 551 (E.D.Pa.1967).
 
 
 42
 We see no practical problems arising from this opinion. It simply gives the aggrieved engineer or fireman a choice of forums in merger-related disputes. It also assures the employee that a representative of his choice will be permitted to serve on the board deciding the dispute.
 
 
 43
 There is one additional issue in this case, however, which prevents us from requiring that this particular dispute be submitted to a Public Law Board. The BNI alleged in its answer that the trial court was without jurisdiction to order the BNI to join in convening a Public Law Board under the Railway Labor Act inasmuch as that Act does not have extraterritorial applicability to Canadian citizens employed in Canada. It alleged that the claims asserted here were all claims of Canadian citizens employed in Canada. The Union submitted affidavits reciting that a long standing custom and practice existed between the UTU-E, the BNI and its predecessors under which the parties agreed that work performed in Canada would be subject to the disputes settlement provisions of the Railway Labor Act. The affidavit further recited that the BNI had recognized the jurisdiction of the National Railroad Adjustment Board to determine claims involved in incidents arising in Canada. A subsequent affidavit filed by the Union stated that the claims of one of the employees involved work performed in Seattle, Washington. The BNI submitted counteraffidavits stating that the claimants were employed by the BNI at its yard at Vancouver, British Columbia. It submitted the original claims filed by the UTU-E with the BNI in support of its position.
 
 
 44
 The issue of the applicability of the Railway Labor Act to Canadian Workers was discussed at trial, but no evidence was taken with respect to the factual issues raised by the conflicting affidavits. No findings were made by the trial court with respect to the issue.
 
 
 45
 This Court held in Air Line Stewards, Etc., Ass'n v. Northwest Airlines, Inc., 267 F.2d 170 (8th Cir.), cert. denied, 361 U.S. 901, 80 S.Ct. 208, 4 L.Ed.2d 156 (1959), that the Railway Labor Act was limited to the continental United States and its territories. See also Airline Stewards, Etc. v. Trans World Airlines, Inc., 273 F.2d 69 (2nd Cir. 1959), cert. denied, 362 U.S. 988, 80 S.Ct. 1075, 4 L.Ed.2d 1021 (1960); Airline Dispatchers Ass'n v. National Mediation Board, 89 U.S.App.D.C. 24, 189 F.2d 685, cert. denied, 342 U.S. 849, 72 S.Ct. 77, 342 U.S. 849 (1951); Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees v. Robert W. Blanchette, et al., Trustees of the Property of Penn Central Transportation Company, Doc.No. CL-21125, National Railroad Adjustment Board Award No. 21413 (February 18, 1977).
 
 
 46
 In the light of these decisions, an initial determination must be made as to whether the disputed work was performed exclusively in Canada. We cannot make that determination from this record. It must be made by the trial court.
 
 
 47
 If it is determined that the work was performed exclusively in Canada, then the trial court must determine whether there was a long standing custom and practice by the UTU-E and the BNI to submit such disputes to a Public Law Board. If that question is answered in the affirmative, a decision must be made as to whether jurisdiction can be conferred on a Public Law Board by custom and practice. We defer answering that question until the trial court makes appropriate factual findings and expresses its opinion on the matter.
 
 
 48
 In summary, we hold that the UTU-E has a right to submit merger-related disputes to a Public Law Board established pursuant to the Railway Labor Act and has the right to be represented on the Public Law Board deciding the disputed issues. The disputed issues are to be decided in accordance with interpretations based on the collective bargaining agreement by the bargaining agent of the employees submitting the claims. We further hold, however, that the right to have a public Law Board created does not extend to claims submitted by employees who performed the disputed work exclusively outside the territorial limits of the United States. We leave open the question of whether jurisdiction to decide disputes can be extended to such work by custom and practice. We remand to the District Court for action not inconsistent with this opinion.
 
 
 49
 Each party to this appeal will bear its own costs.
 
 
 
 *
 TOM C. CLARK, Associate Justice, Retired, now deceased, sat by designation, participated in the conference and agreed to the disposition reflected in this opinion
 
 
 [1]
 A strong argument can be made that the Special Adjustment Board incorrectly decided the jurisdictional issue. The decision departs significantly from the long practice of permitting employees to process grievances through the union of their choice and permitting the union selected to have its representative on the arbitration panel. There is no evidence to indicate that the UTU-E intended to give up its rights in this regard. To the contrary, the Merger Protection Agreement between the UTU-E and the BNI provided that the BNI would "take over and assume all contracts, schedules and agreements between (the merging carriers) and the (UTU-E) concerning rates of pay, rules, working conditions and fringe benefits * * * ." Nevertheless, our function is limited solely to determining whether the arbitration decision draws its essence from the collective bargaining agreement, United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); International Union, etc. v. White Motor Corp., 505 F.2d 1193 (8th Cir. 1974), and we cannot say it did not do so here. Another Special Adjustment Board, Board No. 767, Preston J. Moore, neutral chairman, held that claims similar to those advanced here may be submitted to and decided by Public Law Boards established pursuant to the Railway Labor Act. The matter settled before it was referred to a Public Law Board
 
 
 [2]
 Subsequent to our decision, the matter was submitted to a Public Law Board in which the BLE, the UTU-E and BNI participated. The Board accepted jurisdiction of the dispute. It affirmed the award of the Special Board of Adjustment No. 768, stating that the award was "final and binding on the parties therein." It dismissed the petition of the UTU-E without prejudice. The Public Law Board was critical of our holding but did decide the merits of the dispute with both unions participating
 
 
 [3]
 We believe that the cases afford very substantial support for the view that Congress intended the ICC to have jurisdiction to prescribe the method for determining the solution of labor problems arising directly out of approved mergers. Thus, like the trial court, we come to the conclusion that to hold otherwise would be to disregard the plain language of § 5 (11) conferring exclusive and plenary jurisdiction upon the ICC to approve mergers and relieving the carrier from all other restraints of federal law
 Unquestionably, the Railway Labor Act is a federal law. We find no express or implied exception of the provisions of the Railway Labor Act from the operative provisions of § 5 (11).
 Brotherhood of Loc. Eng. v. Chicago & North Western Ry. Co., 314 F.2d 424, 431-432 (8th Cir. 1963).