**Dave ALLEN, et al., Plaintiffs,**

**v.**

**CSX TRANSPORTATION, INC., Defendant.**

**Civ. A. No. 90–3045.**

United States District Court, District of Columbia.

Feb. 14, 1992.

Richard A. Allen, Richard P. Schweitzer, Zuckert, Scoutt & Rasenberger, Washington, D.C., for plaintiffs.

John C. Martin, Asst. U.S. Atty., Washington, D.C., for defendant NRAB.

Mark Holden, Ronald M. Johnson, Charles L. Warren, Richard Schlegel, Akin, Gump, Hauer & Feld, Washington, D.C., for defendant CSX Transp., Inc.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Before this Court are Plaintiffs' Motion for Summary Judgment and Defendant's Cross–Motion for Summary Judgment. We have fully considered the parties' motions, oppositions and replies, and we heard the parties on January 29, 1992. Accordingly, we grant plaintiffs' motion and deny defendant's motion.

### I. *Background*

The plaintiffs are petitioning the Court to set aside orders of the National Railway Adjustment Board ("NRAB"). Plaintiffs are Canadian employees of CSX Transportation ("CSX") who perform their work within the boundaries of Canada.

The case has a complicated factual background. In February 1988, two of plaintiffs' fellow employees filed a class action against CSX in D.C. Superior Court alleging breach of contract. *See Rastall v. CSX Corporation,* 696 F.Supp. 683 (D.D.C. 1988). In *Rastall,* the Canadian employees as here argued that they should be paid in U.S. dollars, or equivalently to U.S. dollars, since they are covered by the same collective bargaining agreement as United States employees. CSX by way of response contended that the dispute should be arbitrated by the NRAB. CSX removed the *Rastall* case from the Superior Court to the District Court asserting federal question jurisdiction on the ground that either the Railway Labor Act ("RLA") or the Labor Management Relations Act ("LMRA") applied and required the parties to submit such disputes to arbitration. Judge Gesell found that neither the RLA nor the LMRA had extraterritorial effect to govern employees who are citizens of another country and work in that other country. *Id.* at 684–85. As there was then no basis for federal question jurisdiction, Judge Gesell remanded the case to Superior Court. *Id.* at 685.

The Superior Court at this point concluded that the dispute resolution provisions contained in the collective bargaining agreements required the parties to submit to binding arbitration, and granted CSX's motion for summary judgment. On appeal, the District of Columbia Court of Appeals reversed and remanded the case for further proceedings. *Rastall v. CSX Transportation, Inc.,* 574 A.2d 271 (D.C.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1018, 112 L.Ed.2d 1099 (1991). The Court of Appeals held that the employees' contracts allowed them to either arbitrate or seek a remedy at law for labor disputes. 574 A.2d at 274. Plaintiffs allege that they intend to pursue their action in a jury trial in District of Columbia Superior Court.

While the *Rastall* case was pending appeal, CSX submitted 11 separate actions for arbitration before the NRAB. CSX in these actions submitted the question of

whether arbitration was required, but subsequently CSX and the two unions, the Brotherhood of Locomotive Engineers ("BLE") and the United Transportation Union ("UTU"), agreed to dismiss the NRAB proceedings on arbitrability and instead agreed to allow the NRAB to resolve the merits of the currency claim for 21 employees (18 of whom are named plaintiffs in the action at bar). The case was then sent by the NRAB to a referee who upheld CSX's practice of paying Canadian employees in Canadian dollars.

In a separate set of proceedings, while the appeal of the Superior Court's decision in *Rastall* was pending, a number of CSX's Canadian employees submitted the currency dispute to the NRAB. In each case, the submission contested the jurisdiction of the NRAB and stated that they were filing with the NRAB only because the Superior Court had held that the dispute could not be tried in court. *See* Plaintiff's Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 10. When the Court of Appeals for the District of Columbia decided that arbitration was not required, the employees then moved to withdraw all the arbitrations, and were permitted to do so except for the one arbitration that had already been argued.

In this case, plaintiffs seek specifically to have the three awards by the NRAB vacated. The three arbitration awards challenged include the arbitrations brought by UTU,[1] BLE,[2] and the group of individual employees.[3] In all three awards, referee David Twomey decided that the Canadian employees should be paid in Canadian dollars. He based his decision on the fact that they had been paid in Canadian dollars for over 30 years. *See* Reply of CSX Transportation, Inc. to Plaintiffs' Memorandum in Opposition to CSX Transportation, Inc.'s Cross Motion for Summary Judgment, Ex. C.

## II. *Discussion*

### A. Jurisdiction of this Court

 The Court has only limited jurisdiction to review decisions of arbitral panels under the RLA. However, although the range is "among the narrowest known to law," *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978), judicial review is permitted if there is: 1) failure of the Board to comply with the RLA; 2) fraud or corruption; or 3) failure of the Board to confine itself to matters within its jurisdiction. *Del Casal v. Eastern Airlines, Inc.,* 634 F.2d 295, 298–99 (5th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981).

 Plaintiffs argue that the RLA specifically permits the District Court to review and vacate a decision of the NRAB where the Board has exceeded its jurisdiction. Indeed, the language of the statute appears to so provide,[4] and other courts have repeatedly interpreted the provision as such. *See, e.g., Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978); *Ozark Air Lines, Inc. v. Air Line Pilots Association, Int'l,* 744 F.2d 1347, 1350 (8th Cir.1984), *vacated, adhered to en banc,* 761 F.2d 1259 (8th Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 231 (1985); *Del Casal,* 634 F.2d at 298.

Defendant points to two recent cases in this District in which the court held that it was without jurisdiction to review as the burden was on the protesting party to show that a provision of the RLA mandated that the National Mediation Board ("NMB") refrain from some action. *See* Memorandum of Points and Authorities in Support of Defendant CSX Transportation, Inc.'s Motion for Summary Judgment at 31 (discussing *International Brotherhood of Teamsters v. National Mediation Board,* 136 L.R.R.M. (BNA) 2193, 1990 WL 264708

---

**1.** *CSX Transportation v. United Transportation Union,* Award No. 26,963 (First Division 1989).

**2.** *CSX Transportation v. Brotherhood of Locomotive Engineers,* Award No. 26,964 (First Division 1989).

**3.** *CSX Transportation v. Allen,* Award No. 24,000 (First Division 1990).

**4.** *See* 45 U.S.C. § 153 First (q), quoted *infra.*

(D.D.C.1990); *Railway Labor Executives Ass'n v. National Mediation Board,* No. 89–3306 (D.D.C. June 10, 1991) (Green, J.H.). However, these two cases are inapposite for several reasons. First, the cases dealt with the NMB, not the NRAB. Second, both courts acknowledged that they had at least some jurisdiction to consider the legality of the NMB's actions. *See* 136 L.R.R.M. (BNA) at 2194; *Railway Labor Executives Ass'n,* slip op. at 5. Third, and most important, in both of those cases, the courts held that the NMB had the substantive jurisdiction under the RLA to take the actions it took; consequently, in finding that the NMB had exclusive jurisdiction, the district court could not also have jurisdiction over the dispute. The question here is whether this Court has the jurisdiction to consider whether the NRAB, through the decision of its referee Twomey, acted outside its jurisdiction: if the Board had jurisdiction, we would not disturb its result. On the other hand, this Court has jurisdiction to vacate an award of the NRAB if the Board exceeded its jurisdiction.

### B. Standing

■ Defendants further assert that the individual employees are without standing to challenge the NRAB arbitration awards in the BLE and UTU grievances. Defendants argue that the unions have the authority to assent to arbitration and that individual employees do not have standing to independently challenge the award. Plaintiffs counter that defendants are ignoring the language of 45 U.S.C. § 153 First (q), which confers standing on individual plaintiffs to challenge the BLE and UTU awards. *See* Memorandum in Opposition to CSX Transportation, Inc.'s Cross Motion for Summary Judgment ("Cross Motion Opposition") at 4.

The language of 45 U.S.C. § 153 First (q) expressly permits employees to challenge the jurisdiction of the NRAB through suits filed in district court. The section reads:

(q) If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Adjustment Board. The Adjustment Board shall file in the court the record of the proceedings on which it based its action. The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject of review as provided in sections 1291 and 1254 of Title 28.

45 U.S.C. § 153 First (q).

Further, the Third Circuit recently agreed that this provision gives standing to aggrieved employees. *See McQuestion v. New Jersey Transit Rail Operations, Inc.,* 892 F.2d 352 (3d Cir.1990). *McQuestion* concerned two employees who sought a petition for review of adverse determinations by a division of NRAB. The employees had been discharged and their union had filed petitions with the Board. The petitions were signed only by the union representative, and the district court had dismissed for lack of subject matter jurisdiction on the grounds that the individual employees lacked standing to appeal. The Third Circuit reversed, finding that the clear language of 45 U.S.C. § 153 First (q) permitted the employees to bring the action. *Id.* at 354. The Circuit noted that

although they were not named petitioners before the NRAB, they were "not legal strangers" to the proceedings. The district court had observed that they were the real parties in interest and the Circuit noted that the grievances were "uniquely individual." *Id.* at 354.

Unlike the grievances in *McQuestion,* the grievances in the case at bar were not individual to the plaintiffs, although they are unique to the Canadian employees of CSX. Nevertheless, the Canadian employees have a unique interest in the outcome of such an arbitration, and the statute provides them standing to challenge that decision in this Court. Defendant's contention as to plaintiffs' alleged lack of standing is without merit.

### C. Jurisdiction of the NRAB

As this Court can vacate the awards of the NRAB if the Board exceeded its jurisdiction, we now turn to whether the Board had jurisdiction over these claims. Plaintiffs argue that the NRAB is a creature of the RLA, and that the Board did not have jurisdiction under the Act to hear the dispute. Plaintiffs contend that the RLA only operates domestically and can not reach extraterritorial disputes concerning Canadian employees working solely in Canada. Defendant counters that even if the NRAB were without statutory authority, jurisdiction was acquired through the consent of the parties. We find plaintiffs' argument more persuasive.

■ The NRAB did not have jurisdiction under the RLA to hear this dispute. RLA jurisdiction is defined by reference to that of the Interstate Commerce Act, 49 U.S.C. § 1. The RLA defines an "employee" as "every person in the service of a carrier who performs any work defined as that of an employee ... in the orders of the Interstate Commerce Commission now in effect." 45 U.S.C. § 151, Fifth. The Interstate Commerce Commission has no jurisdiction over transportation performed wholly outside the United States. *See* 49 U.S.C. § 10501(a)(2). Consequently, the Canadian employees are not "employees" within the meaning of the RLA.

We join many other courts in finding that the RLA does not apply extraterritorially. *See, e.g., General Committee of Adjustment v. Burlington Northern, Inc.,* 563 F.2d 1279, 1285–86 (8th Cir.1977); *Air Line Stewards & Stewardesses Ass'n v. Northwest Airlines, Inc.,* 267 F.2d 170, 175 (8th Cir.), *cert. denied,* 361 U.S. 901, 80 S.Ct. 208, 4 L.Ed.2d 156 (1959); *Vollmar v. CSX Transportation, Inc.,* 705 F.Supp. 1154, 1165 (E.D.Va.1989) ("Courts, therefore, have uniformly precluded RLA jurisdiction over disputes involving employees who perform services wholly outside the United States."), *aff'd,* 898 F.2d 413 (4th Cir.1990). The courts in this Circuit have also held that the RLA does not apply to Canadian employees; including so holding in the related case between CSX and its Canadian employees before Judge Gesell. *See Rastall v. CSX Corp.,* 696 F.Supp. 683, 684 (D.D.C.1988); *see also Air Line Dispatchers Ass'n v. National Mediation Board,* 189 F.2d 685 (D.C.Cir.), *cert. denied,* 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951). Consequently, if the NRAB arbitration is to bind the employees, jurisdiction must be created by consent.

■ Although jurisdiction can be created by the consent of the parties in some instances, it cannot provide jurisdiction in a statutorily-created arbitration board such as the NRAB that otherwise would not have jurisdiction. In *General Committee of Adjustment v. United States,* 102 L.R.R.M. (BNA) 2869, 1979 WL 1862 (D.Minn.1979), *aff'd,* 620 F.2d 161 (8th Cir.), *cert. denied,* 449 U.S. 826, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980), the District Court held that agreement of the parties could not confer jurisdiction on a tribunal established by the NRAB. The court noted:

> Even if such an established custom and practice had existed, jurisdiction of a Railway Labor Act Board cannot be extended to employment performed exclusively in Canada. This is not to say that the parties themselves cannot agree to an arbitration tribunal having the same or similar characteristics of a Public Law Board under the Railway Labor Act. However, the jurisdiction of such a

Board under the Act cannot be invoked and imposed or sanctioned by this Court under authority of the Act.

102 L.R.R.M. (BNA) at 2871. In *General Committee of Adjustment v. Burlington Northern, Inc.*, 620 F.2d 161, 164 n. 4 (8th Cir.), *cert. denied*, 449 U.S. 826, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980), the Eighth Circuit expressly left open the question of whether parties can voluntarily confer jurisdiction on Public Law Boards. The Eighth Circuit declined to set aside an award by a U.S. Public Law Board concerning Canadian employees working strictly in Canada, affirming the district court's determination that Canadian courts had the appropriate subject matter jurisdiction. *See also General Committee of Adjustment v. Burlington Northern, Inc.*, 563 F.2d 1279, 1285–86 (8th Cir.1977) (deferring question of whether jurisdiction can be conferred on a Public Law Board by custom and practice).

█ Custom and practice alone is also not sufficient to confer jurisdiction where otherwise there would be none. In *Rastall v. CSX Corporation*, 696 F.Supp. 683 (D.D.C.1988), Judge Gesell stated that the collective bargaining agreement cannot be held to require Canadian employees to "arbitrate under RLA over their objection because this would extend RLA, contrary to law." *Id.* at 685. Judge Gesell declined to hold that past practice by the Railway Boards of arbitrating the grievances of Canadian employees determined the legitimacy of the Boards' jurisdiction:

> Defendants assert that since the contract explicitly requires arbitration under the RLA if grievance procedures fail, there have been numerous instances where Railway Adjustment Boards have dealt with grievances of Canadian-based employees covered by the contract. While this policy and practice under the agreement is thus clearly established, there is no indication that the union, the employer or the individuals involved ever questioned the authority of the Railway Adjustment Board process. This anomalous situation may well have occurred because Canadian law apparently insists upon arbitration in situations of this type.

Here, authority to arbitrate under the RLA is challenged and that challenge must be sustained as a matter of law in spite of past practice.

*Id.* at 684–85. Further, the arbitration board has itself declined jurisdiction on occasion when the parties consented but the claims involved Canadian employees. *See, e.g., General Committee of Adjustment v. United States*, 102 L.R.R.M. (BNA) 2869, 2870, 1979 WL 1862 (D.Minn.1979) (listing arbitral decisions holding board was without jurisdiction), *aff'd*, 620 F.2d 161 (8th Cir.), *cert. denied*, 449 U.S. 826, 101 S.Ct. 88, 66 L.Ed.2d 29 (1980).

█ Even if jurisdiction could be created by consent, which is questionable, the plaintiffs dispute that they ever consented to arbitration by the RLA. They assert that the grievances only went to arbitration after plaintiffs had filed the *Rastall* action in the Superior Court of the District of Columbia. They further assert that they did not know of the action, and that as soon as they learned of the submissions to the Board, they wrote to the NRAB to protest the jurisdiction. *See* Cross Motion Opposition at 14; Plaintiffs' Motion for Summary Judgment, Exs. A & B (Letters from Richard Allen to Nancy Dever of October 14, 1988 and December 30, 1988). While pursuing their appeal to the District of Columbia Court of Appeals, plaintiffs agreed to arbitration by the Board only under protest to protect their rights. Plaintiffs assert that CSX had notice of their jurisdictional arguments. Indeed, a letter written in December 1988 to Nancy Dever, the executive secretary for the NRAB, expressly states

> [W]e believe, and have argued in the court action, that the Board has no jurisdiction to entertain CSXT's submission because the Railway Labor Act does not apply to disputes between CSXT and its Canadian employees and that, in any event, neither the Railway Labor Act nor the applicable collective bargaining agreements or any other applicable law require arbitration of the dispute currently pending against CSXT in the Superior Court.

Cross Motion Opposition, Ex. B. As noted, the Superior Court opinion was later overruled.

Plaintiffs tried to preserve their rights as best they could. It would be foolish to hold that they should not have gone forward with the NRAB proceeding once the Superior Court held that the dispute should be arbitrated. They then tried to preserve the argument that the Board was without jurisdiction. To find that they agreed to arbitration when stuck between a rock and a hard place would mock the notion of consent. The NRAB can not have acquired jurisdiction by consent where in fact there was none.

### D. Canadian Law

Finally, defendant asserts that Canadian law should control this issue. Defendant argues that since Canadian law would mandate arbitration, the ruling of the arbitrator should stand. However, this argument fails on both premises. The District of Columbia Court of Appeals expressly found that under Canadian law, either arbitration *or* an action in law were permitted if the collective bargaining agreement so allowed. *Rastall v. CSX Transportation, Inc.*, 574 A.2d 271, 275 (D.C.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1018, 112 L.Ed.2d 1099 (1991). Therefore, even under Canadian law, arbitration would not be mandatory.

Second, whether this issue is required to be arbitrated is entirely separate from the question of whether the NRAB, a board created pursuant to a United States statute, exceeded its jurisdiction in deciding to hear the dispute. This question arises only if the NRAB's jurisdiction can be invoked by consent. If the NRAB did not have jurisdiction to hear the grievance, then the award should be vacated without regard to whether Canadian law would dictate its arbitration. In any event, Canadian law does not mandate its arbitration before the NRAB; even if it does mandate arbitration, Canadian law cannot require arbitration by this Board.

In conclusion, the NRAB acted outside its statutorily derived jurisdiction in arbitrating the issue of whether Canadian employees who work entirely in Canada should be paid in U.S. or Canadian dollars. There is sufficient evidence to conclude that plaintiffs did not consent to the arbitrator's jurisdiction. Furthermore, even if they had consented, such consent would not be sufficient to extend the legal jurisdiction of the NRAB. Although the parties could have consented to a private arbitration, or some other proceeding, and thereby be bound, such is not the case here. We will not decide the merits of the complaint, but we will vacate the awards of the arbitration panel of the NRAB as its actions exceeded its jurisdiction. Consequently, plaintiffs' motion for summary judgment is granted, and defendant's cross motion for summary judgment is denied.